Filed 3/4/13  Glavinovich v. Hewitt Wolensky LLP CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN L. GLAVINOVICH, | |
|    Plaintiff and Appellant, | G046723 |
|      v. | (Super. Ct. No. 30-2011-00516101) |
| HEWITT WOLENSKY LLP, | O P I N I O N |
|    Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Steven L. Perk, Judge.  Affirmed.

Voss, Silverman & Braybrooke, David C. Voss, Jr., and Andrew T. Schoppe for Plaintiff and Appellant.

Heather Arambarri; Hewitt Wolensky, Gary A. Wolensky, Elizabeth V. McNulty and Cyrus Wilkes for Defendant and Respondent.

\*        \*        \*

This is one of a number of appeals from judgments after orders granting defense motions pursuant to Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute,[2] in a malicious prosecution action by plaintiff John L. Glavinovich. All of the anti-SLAPP motions relate to the same underlying case, *Sweidan v. Orange County Physicians Investment Network, LLC* (Super. Ct. Orange County, 2013, No. 30-2009-00122142).

In this case, Glavinovich appeals the trial court's decision to grant the anti-SLAPP motion filed by defendant Hewitt Wolensky LLP, one of the law firms involved in the underlying case.[3] Based on the minimal, nonspecific evidence produced by Glavinovich in the trial court, he has not demonstrated that he can establish either a lack of probable cause or malice, two of the three requirements to maintain a cause of action for malicious prosecution. We therefore affirm the trial court's decision to grant the anti-SLAPP motion.

I

FACTS

A. *The Underlying Case*

Orange County Physicians Investment Network (OCPIN) was a Nevada limited liability company formed by Glavinovich and approximately 19 others. Its primary purpose was as a holding company for its members' funds to be used for the

---

[1] Unless otherwise indicated, subsequent statutory references are to the Code of Civil Procedure.

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

[3] Glavinovich also purported to appeal from the *order* granting the motion to strike (along with another defendant's) in appeal No. G046722, while appealing the *judgment* here. We address all of Glavinovich's contentions against Hewitt Wolensky in the instant appeal.

acquisition of stock in a company called Integrated Healthcare Holdings, Inc. (Integrated). This company, an investment entity, purchased four hospitals in the Orange County area from Tenet Healthcare Corporation.

In April 2008, Glavinovich was elected as a manager of OCPIN, along with Anil V. Shah, who had held that position since 2005.[4] According to Glavinovich's complaint, acquiring Integrated stock was a "complicated and difficult affair," resulting in separate litigation that is apparently still arguing.

In early 2009, certain members of OCPIN began an effort to remove Shah and Glavinovich as managers. Glavinovich later alleged such actions were illegitimate and interrupted OCPIN's business operations. The dissident members (the OCPIN plaintiffs) then instituted the underlying case (the OCPIN litigation).[5]

Over the next two years, the OCPIN plaintiffs were represented by three different sets of lawyers, of which Hewitt Wolensky was the third. At the time Hewitt Wolensky entered the case, the OCPIN plaintiffs had pled their fourth amended complaint, and a demurrer hearing was pending. According to Hewitt Wolensky, the complaint they inherited had four key points. In sum, the first point was that OCPIN had pledged $30 million to help Integrated fund its acquisition of certain hospitals. Shah had pledged to loan $20 million to OCPIN and directed the issuance of a private placement memorandum to attract new investors. The memorandum claimed that Shah had loaned $20 million to OCPIN, but this was not true, and a number of the OCPIN plaintiffs had

---

[4] There is some dispute, or at least confusion, about when Glavinovich became a manager. In one document he filed in the underlying case, he stated that he had been elected as a comanager in 2005. In his demurrers in the underlying case, and in the malicious prosecution action, he stated he became a comanager in 2008.

[5] At different points, the members were represented by Kenneth Catanzarite of The Catanzarite Law Corporation, Vincent W. Davis of The Law Office of Vincent W. Davis and Associates, and Hewitt Wolensky LLP. All were later named in the malicious prosecution action.

3

relied on his representations in deciding to invest. The second key point was that Shah was eventually sued by Integrated for acts of self-dealing, and OCPIN's management elected to indemnify Shah, against the wishes of its members and in contravention of the relevant operating agreement.

Third, to fund Shah's indemnity, OCPIN's management made two requests for additional capital under the threat of diluting each noncontributing member's ownership interest. These "cash calls," too, were alleged to be in violation of the relevant operating agreement. Finally, OCPIN's management was alleged to have diluted the interest of each noncontributing member, but kept the dilution secret to induce the members to approve the settlement agreements ending the Integrated litigation against Shah. They were asked to approve the agreements without reviewing them, and had they done so, they would have learned that the agreements provided large personal benefits to Shah.

Specifically with regard to Glavinovich, he was alleged to have breached his fiduciary duty by arranging the cash calls in order to fund Shah's indemnification. Further, along with Shah, he was allegedly responsible for the dilution of the noncontributing members ownership, and for inducing the members to sign the settlement agreements.

After the demurrers to the complaint Hewitt Wolensky had inherited from prior counsel were heard and sustained in January 2011, leave to amend was granted. The court concluded, among other things, that the complaint failed to rebut the presumption of the business judgment rule and failed to state a cause of action against Glavinovich. Hewitt Wolensky interpreted leave to amend to mean they had leave to amend the complaint beyond the issues the court specified, but on hearing demurrers to the fifth amended complaint, the court clarified that only correcting specific deficiencies was permitted.

4

The sixth amended complaint was therefore drafted. It alleged breach of fiduciary duty and misrepresentation, and sought declaratory relief and an accounting in addition to damages. Glavinovich's demurrer to the sixth amended complaint was sustained, with the court noting that the OCPIN plaintiffs had not "com[e] even close" to stating a cause of action against him. At least in part, this ruling appeared to be based on a lack of specificity as to time with regard to Glavinovich, as the court noted he had come into the picture much later than the other parties before the court. As to Shah, the court overruled his general demurrer based on the business judgment rule, overruled his demurrer to the misrepresentation cause of action, and granted leave to amend on the claim for accounting. According to Hewitt Wolensky, the litigation continued with Shah as the defendant.

## B. The Malicious Prosecution Case

After he was dismissed from the OCPIN litigation, Glavinovich filed the instant action for malicious prosecution against the OCPIN plaintiffs and their attorneys in the underlying case. The first amended complaint, filed in December 2011, alleged malicious prosecution and intentional infliction of emotional distress.

In response, the defendants, including Hewitt Wolensky, filed anti-SLAPP motions. Hewitt Wolensky argued that probable cause to continue the OCPIN litigation existed, specifically pointing to the allegations relating to the cash calls and the prohibition of any requirements of contributing new capital in the relevant operating agreement. Hewitt Wolensky also pointed to Glavinovich's actions regarding the dilution of member interests, arguing that while the trial court believed the allegations were not sufficient to rebut the Nevada business judgment rule, they established probable cause. It also argued that Glavinovich could not establish the requisite malice to maintain a malicious prosecution claim.

5

While it is probable that Glavinovich filed an opposition to Hewitt Wolensky's motion, it is not in the record in this case. Glavinovich did include a request for judicial notice, which included four documents — the court transcript and notice of ruling relating to the sixth amended complaint, the notice of ruling on the fourth amended complaint, and excerpts from the depositions of Ajay Meka and Jacob Sweidan, two of the OCPIN plaintiffs taken in 2010. No other evidence was submitted.

In February 2012, the court granted the motion as to Hewitt Wolensky. The court concluded that Glavinovich had not established lack of probable cause or malice with respect to the malicious prosecution claim, and also found that the intentional infliction of distress cause of action was barred on multiple grounds.[6] Glavinovich now appeals.

II

DISCUSSION

A. *Statutory Framework*

The anti-SLAPP statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. (See *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2.) The statute is to be "construed broadly." (§ 425.16, subd. (a).)

---

[6] Glavinovich does not address his intentional infliction of emotional distress claim on appeal, and we therefore deem it abandoned.

6

Section 425.16, subdivision (e), specifies the type of acts included within the statute's ambit. An "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Courts engage in a two-step process to resolve anti-SLAPP motions. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).)'" (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.)

"'If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.) To establish the requisite probability of prevailing, the plaintiff must state and substantiate a legally sufficient claim (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123), thereby demonstrating his case has at least minimal merit. (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1105

(*Cole*).) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) Glavinovich "must produce evidence that would be admissible at trial. [Citation.]" (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

On appeal, we "review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court. [Citation.]" (*Cole*, *supra*, 206 Cal.App.4th at p. 1105.) In conducting our review, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

The first step of the anti-SLAPP analysis is readily satisfied here, as it is in nearly all claims for malicious prosecution. (See *Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at pp. 734-735.) "It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition. [Citations.] ""'[T]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.'"' [Citations.]" (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087.) "Under these accepted principles, a cause of action arising from a defendant's alleged improper filing of a lawsuit may appropriately be the subject of a section 425.16 motion to strike. [Citation.] The essence of the [plaintiffs'] malicious prosecution claim is that the plaintiff in the underlying action . . . filed litigation that was improper because it was allegedly filed with a malicious motive and without probable cause. This claim

8

'aris[es] from' the defendant's constitutionally protected petitioning activity, and therefore is subject to the anti-SLAPP statute. [Citation.]" (*Id.* at p. 1087-1088; *see also Cole*, *supra*, 206 Cal.App.4th at p. 1105.) We therefore turn to the question of whether Glavinovich has established the requisite probability of prevailing on his claim.

### B. Malicious Prosecution

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice. [Citation.]" (*Soukup, supra,* 39 Cal.4th at p. 292.) Continuing an already filed lawsuit without probable cause may also be the basis for a malicious prosecution claim. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 969 (*Zamos*); see also *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226.)

We examine the evidence produced in the trial court to determine if Glavinovich's claim passes muster under the anti-SLAPP statute. As noted above, the only evidence Glavinovich submitted was the court's rulings and excerpts from the depositions of two of the OCPIN plaintiffs,[7] taken long before Hewitt Wolensky involved itself in this case. In Meka's deposition, he was asked questions such as "what fiduciary duties did those two doctors [Shah and Glavinovich] have?" The question was objected to on the grounds of attorney-client privilege, and Meka answered that he did not have information other than what his attorney had told him. When asked for facts underlying the fiduciary duty claims, he repeatedly answered that he only knew what his counsel, Kenneth Catanzarite, had told him. Questions regarding other claims were answered similarly, and Sweiden answered in a consistent manner.

---

[7] Glavinovich repeatedly refers to Meka and Sweiden as "lead plaintiffs" without any evidence that they had any special status in the litigation.

In support of its motion, Hewitt Wolensky submitted the declaration of Cyrus Wilkes, an attorney at the firm. In the declaration, Wilkes stated that before the firm was retained, he was informed about the cash calls used to raise funds to indemnify Shah for expenses incurred during the Integrated litigation. Based on his review of the relevant OCPIN operating agreement, which was attached as an exhibit, he believed it contained an express provision prohibiting mandatory cash calls. He was also informed that Shah and Glavinovich had diluted the interests of the noncontributing members, a fact about which the members were not aware until the settlement agreements in the Integrated litigation had been signed. He believed these facts provided sufficient probable cause to proceed against Glavinovich. He was also aware of the confusion surrounding the time frame in which Glavinovich was a manager of OCPIN created by different statements by Glavinovich in different documents.

### 1. Probable Cause

"Probable cause exists when a lawsuit is based on facts reasonably believed to be true, and all asserted theories are legally tenable under the known facts." (*Cole, supra,* 206 Cal.App.4th at p. 1106.) Whether the facts known to an attorney constituted probable cause to prosecute an action is a question of law. (*Zamos*, *supra*, 32 Cal.4th at p. 971.) More specifically, "'[t]he presence or absence of probable cause is viewed under an objective standard applied to the facts upon which the defendant acted in prosecuting the prior case. [Citation.] The test of determining probable cause is whether any reasonable attorney would have thought the claim to be tenable. [Citation.] . . . [¶] Hence, "probable cause to bring an action does not depend on it being meritorious, as such, but upon it being *arguably tenable,* i.e., not so completely lacking in merit that no reasonable attorney would have thought the claim tenable. [Citation.]"' [Citation.] Probable cause exists if the claim is legally sufficient and can be substantiated by

competent evidence. [Citation.]" (*Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 448-449.)

Glavinovich bears the burden of establishing a prima facie case. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) His argument on this point in his opening brief is sparse. It primarily consists of the following. "As illustrated in the above-cited excerpts from the depositions of lead OCPIN Defendant Meka, neither Meka nor any other OCPIN Defendant had probable cause to bring any of their claims against Glavinovich. This includes the 'cash call'-related claims cited by the Court in its order granting the motions to strike filed by Hewitt & Wolensky . . . and extends to the other claims—for breach of fiduciary duty, fraud, misrepresentation, constructive fraud, professional negligence, etc. — which were alleged in the OCPIN Defendants' Second through Sixth Amended Complaints. [¶] In view of the fact that the OCPIN Defendants and the Attorney Defendants had merely to reveal some portion of the facts which were allegedly known only to Catanzarite in order to survive the demurrers which eventually extinguished their claims against Glavinovich, it is even more reasonable to infer that those facts never existed in the first instance, and that the claims alleged against Glavinovich were assuredly 'based upon suspicion, imagination, speculation, surmise, conjecture or guesswork.'"

Thus, Glavinovich relies on the deposition testimony of only two of more than a dozen plaintiffs, taken more than a year before Hewitt Wolensky entered the case, to support his contention that no probable cause existed. This is not sufficient evidence to support a prima facie case. The 2010 depositions of two plaintiffs merely demonstrate what *those two plaintiffs* knew, and were willing to disclose under relevant law, at the time their depositions were taken. There is no legal basis for attributing their knowledge, or lack thereof, to all other OCPIN plaintiffs. It also does not demonstrate the lack of probable cause by others — namely, Hewitt Wolensky — when they entered the case

11

more than a year later. Further, it does not speak to the relevant standard applied to *attorneys* in malicious prosecution actions, specifically, "'whether any reasonable attorney would have thought the claim to be tenable.'" (*Antounian v. Louis Vuitton Malletier*, *supra*, 189 Cal.App.4th at pp. 448-449.) Indeed, Glavinovich submitted no evidence on this point. As a matter of law, Glavinovich has not established a lack of probable cause.

### 2. *Malice*

Even if we had found that Glavinovich established probable cause, he must also demonstrate a prima facie case supporting the last element of a malicious prosecution action, malice. "The 'malice' element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494 (*Downey Venture*).)

Glavinovich argues that malice can be inferred from nothing more than the lack of probable cause, but the lack of probable cause alone is insufficient. (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 452.) Were it otherwise, the malice requirement would simply disappear. "A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citation], but the lack of probable cause must be supplemented by other, additional evidence." (*HMS Capital, Inc. v. Lawyers Title Co.*, *supra*, 118 Cal.App.4th at p. 218.) "Merely because the prior action lacked legal tenability, as measured objectively (i.e., by the standard of whether any reasonable attorney would have thought the claim tenable [citation]), *without more*, would not logically or reasonably permit the inference that such lack of probable cause

12

was accompanied by the actor's subjective malicious state of mind. In other words, the presence of malice must be established by other, additional evidence." (*Downey Venture, supra*, 66 Cal.App.4th at p. 498, fn. omitted.)

"[T]hat evidence must include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal system for personal gain or satisfaction at the expense of the wrongfully sued defendant. [Citation.]" (*Downey Venture*, *supra*, at pp. 498-499; see also *Daniels v. Robbins*, *supra*, 182 Cal.App.4th at p. 225.) While malice may be inferred from circumstantial evidence such as the lack of probable cause, such evidence must be "supplemented with proof that the prior case was instituted largely for an improper purpose." (*Cole*, *supra*, 206 Cal.App.4th at p. 1114.)

Moreover, we keep in mind that malicious prosecution is a "disfavored action." (*Leonardini v. Shell Oil Co*. (1989) 216 Cal.App.3d 547, 566.) "[T]he elements of [malicious prosecution] have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872.) We are therefore entirely disinclined to read out the malice requirement from a malicious prosecution cause of action, as Glavinovich would have us do.

The evidence is completely insufficient to establish a prima facie case of malice against Hewitt Wolensky.[8] Unlike *Zamos*, *supra*, 32 Cal.4th 958, a case upon which he relies, the evidence presented to the trial court does not demonstrate Hewitt

---

[8] For the first time in his reply brief, Glavinovich argues that Hewitt Wolensky aided and abetted the malicious prosecution of the other defendants, and was therefore equally liable. "Aiding and abetting a tort requires knowingly assisting the wrongful act. [Citation.]" (*Cole*, *supra*, 206 Cal.App.4th at p. 1106.) Glavinovich does not offer any evidence of aiding and abetting other than Hewitt Wolensky's participation in the underlying case.

Wolensky had knowledge of any lack of probable cause.  The only evidence offered by Glavinovich in addition to pleadings and court rulings, the 2010 depositions of two plaintiffs, are simply insufficient on this point.  In contrast, Hewitt Wolensky submitted evidence in the form of Wilkes's declaration, stating why the firm believed the case had sufficient cause to proceed.  Glavinovich has failed to meet his burden to demonstrate malice, and therefore the probability of success on his malicious prosecution claim.  Thus, Hewitt Wolensky's anti-SLAPP motion was properly granted by the trial court.

III

DISPOSITION

The judgment is affirmed.  Pursuant to section 425.16, subdivision (c)(1), Hewitt Wolensky may file the appropriate motion for attorney fees with the trial court.  Hewitt Wolensky is also entitled to costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

14