Filed 3/4/13  Glavinovich v. Davis CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN L. GLAVINOVICH, | |
| Plaintiff and Appellant, | G046730 |
| v. | (Super. Ct. No. 30-2011-00516101) |
| VINCENT W. DAVIS et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Steven L. Perk, Judge.  Affirmed.

Voss, Silverman & Braybrooke, David C. Voss, Jr., and Andrew T. Schoppe for Plaintiff and Appellant.

Law Offices of Vincent W. Davis & Associates, Artin DerOhanian and Vincent W. Davis for Defendants and Respondents Vincent W. Davis and Vincent W. Davis & Associates.

Fleming & Fell, George E. Fleming, Bibianne U. Fell and Tracy L. Angelopous for Defendants and Respondents Ajay Meka, Yong Chun, Jaime Ludmir, Ashok Amin, Bharat Chauhan, Surinder Dang, Joginder Jodhka, Sangamitra Kothapa, Anthony Lee, Robert Melikian, Ahmed Salem, Praful Sarode, Grace Sein, Patrick Walsh and Jacob Sweidan.

*        *        *

This is one of a number of appeals from judgments after orders granting defense motions pursuant to Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute,[2] in a malicious prosecution action by plaintiff John L. Glavinovich.  All of the anti-SLAPP motions relate to the same underlying case, *Sweidan v. Orange County Physicians Investment Network, LLC* (Super. Ct. Orange County, 2013, No. 30-2009-00122142).

In this case, Glavinovich appeals the trial court's decision to grant three anti-SLAPP motions filed by 1) Vincent W. Davis and the Law Offices of Vincent W. Davis & Associates (collectively Davis); 2) Jacob Sweidan, and 3) Ajay Meka, Yong Chun, Jamie Ludmit, Ashok Amin, Bharat Chauhan, Suringder Dang, Joginder Jodhka, Sandamitra Kothapa, Anthony Lee, Robert Melikian, Ahmed Salem, Praful Sarode, Grace Sein, and Patrick Walsh (collectively, with Sweidan, the OCPIN plaintiffs).  Based on the minimal and nonspecific evidence produced by Glavinovich in the trial court, he has not demonstrated that he can establish a lack of probable cause or malice, two of the

---

[1] Unless otherwise indicated, subsequent statutory references are to the Code of Civil Procedure.

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.'"  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

three requirements to maintain a cause of action for malicious prosecution.  We therefore affirm the trial court's decision to grant the anti-SLAPP motion.

I

FACTS

*A.  The Underlying Case*

Orange County Physicians Investment Network (OCPIN) was a Nevada limited liability company formed by Glavinovich and approximately 19 others.  Its primary purpose was as a holding company for its members' funds to be used for the acquisition of stock in a company called Integrated Healthcare Holdings, Inc. (Integrated).  This company, an investment entity, purchased four hospitals in the Orange County area from Tenet Healthcare Corporation.

In April 2008, Glavinovich was elected as a manager of OCPIN, along with Anil V. Shah, who had held that position since 2005.  According to Glavinovich's complaint, acquiring Integrated stock was a "complicated and difficult affair," resulting in separate litigation that is apparently still arguing.

In early 2009, certain members of OCPIN began an effort to remove Shah and Glavinovich as managers.  Glavinovich later alleged such actions were illegitimate and interrupted OCPIN's business operations.  The dissident members then instituted the underlying case (the OCPIN litigation).  Six consecutive complaints then followed, filed by three different law firms.  The initial complaint was a derivative action.  The first amended complaint alleged causes of action against Glavinovich for breach of fiduciary duty, constructive fraud, injunction, professional negligence, accounting, and several declaratory relief claims.  Similar allegations followed in the second amended and third amended complaints and he again demurred.  In each instance the demurrers were sustained with leave to amend.

3

Davis entered the case and eventually filed the fourth amended complaint. According to the declaration Davis later filed in support of the anti-SLAPP motion, his review of the case showed that in the fall of 2008, Shah and Glavinovich twice made "cash calls" to the OCPIN plaintiffs in order to raise capital to indemnify Shah in litigation initiated by Integrated. Davis believed that Shah and Glavinovich diluted the ownership interest of the members that failed to contribute in their own favor. The OCPIN operating agreement contained an explicit prohibition against such cash calls. Further, it was apparent to Davis that the OCPIN plaintiffs were unaware of the dilution of their interests until 2009, and became aware only after they signed the settlement agreements that ended the litigation against Shah.

Davis substituted out of the case prior to a hearing on the fourth amended complaint, which was eventually sustained with leave to amend. A fifth amended complaint, alleging essentially the same causes of action against Glavinovich, was filed thereafter. A demurrer was filed, but the court, on its own motion, struck the entire complaint for amending beyond the scope of the court's prior order. A sixth amended complaint followed, alleging similar claims. Glavinovich's demurrer, which primarily argued the OCPIN plaintiffs had failed to allege facts sufficient to overcome Nevada's business judgment rule, was sustained without further leave to amend. The court noted that the OCPIN plaintiffs had not "com[e] even close" to stating a cause of action against him.

*B. The Malicious Prosecution Case*

After he was dismissed from the OCPIN litigation, Glavinovich filed the instant action for malicious prosecution against the OCPIN plaintiffs and their attorneys in the underlying case. The first amended complaint, filed in December 2011, alleged malicious prosecution and intentional infliction of emotional distress.

4

In response, the defendants filed a number of separate motions to strike, three of which are relevant to this appeal. All three argued that Glavinovich could not establish the probability of success on the merits, because he could not demonstrate either a lack of probable cause or malice sufficient to sustain a cause of action for malicious prosecution. In opposition, Glavinovich relied on the complaints and demurrers in the underlying case, and excerpts from the depositions of Meka and Sweidan, taken in February 2010, to argue that none of the OCPIN plaintiffs had probable cause to sustain the litigation. With respect to malice, Glavinovich argued that "all of the inferences support Glavinovich's contention that the 'improper motive' and 'ulterior purpose'. . . was to enable the OCPIN [plaintiffs] . . . to take control of the OCPIN entity from Glavinovich and Shah . . . ."

The court heard the anti-SLAPP motions on March 23, 2012. The court granted the motions, concluding the lawsuit was indeed a SLAPP, and that Glavinovich had not established a prima facie case of either malicious prosecution or intentional infliction of emotional distress.[3] The court also granted Glavinovich's requests for judicial notice, but not the truth of the matter included in the documents. Glavinovich now appeals.

II

DISCUSSION

A. *Statutory Framework*

The anti-SLAPP statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that

---

[3] Glavinovich does not address his intentional infliction of emotional distress claim on appeal, and we therefore deem it abandoned.

5

the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. (See *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2.) The statute is to be "construed broadly." (§ 425.16, subd. (a).)

Section 425.16, subdivision (e), specifies the type of acts included within the statute's ambit. An "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Courts engage in a two-step process to resolve anti-SLAPP motions. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).)'" (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.)

"'If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.'

6

[Citation.]" (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.) To establish the requisite probability of prevailing, the plaintiff must state and substantiate a legally sufficient claim (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123), thereby demonstrating his case has at least minimal merit. (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1105 (*Cole*).) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) Glavinovich "must produce evidence that would be admissible at trial. [Citation.]" (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

On appeal, we "review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court. [Citation.]" (*Cole*, *supra*, 206 Cal.App.4th at p. 1105.) In conducting our review, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

The first step of the anti-SLAPP analysis is readily satisfied here, as it is in nearly all claims for malicious prosecution. (See *Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at pp. 734-735.) "It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition. [Citations.] ""[T]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.""" [Citations.]" (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083,

1087.) "Under these accepted principles, a cause of action arising from a defendant's alleged improper filing of a lawsuit may appropriately be the subject of a section 425.16 motion to strike. [Citation.] The essence of the [plaintiffs'] malicious prosecution claim is that the plaintiff in the underlying action . . . filed litigation that was improper because it was allegedly filed with a malicious motive and without probable cause. This claim 'aris[es] from' the defendant's constitutionally protected petitioning activity, and therefore is subject to the anti-SLAPP statute. [Citation.]" (*Id.* at p. 1087-1088; *see also Cole*, *supra*, 206 Cal.App.4th at p. 1105.) We therefore turn to the question of whether Glavinovich has established the requisite probability of prevailing on his claim.

## B. Malicious Prosecution

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice. [Citation.]" (*Soukup, supra,* 39 Cal.4th at p. 292.) Continuing an already filed lawsuit without probable cause may also be the basis for a malicious prosecution claim. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 969 (*Zamos*); see also *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226.)

We examine the evidence produced in the trial court to determine if Glavinovich's claim passes muster under the anti-SLAPP statute. With the exception of prior pleadings and court rulings, the only evidence Glavinovich submitted were deposition excerpts from two of the OCPIN plaintiffs. In Meka's deposition,[4] he was asked questions such as "what fiduciary duties did those two doctors [Shah and Glavinovich] have?" The question was objected to on the grounds of attorney-client

---

[4] Glavinovich repeatedly refers to Meka and Sweiden as "lead plaintiffs" or "ringleaders" without any evidence they had any special status in the litigation.

8

privilege, and Meka answered that he did not have information other than what his attorney had told him. When asked for facts underlying the fiduciary duty claims, he repeatedly answered that he only knew what his counsel at the time, Kenneth Catanzarite, had told him. Questions regarding other claims were answered similarly, and Sweidan answered in a consistent manner.

In support of their motions, Davis and the OCPIN plaintiffs submitted a number of documents, including the OCPIN operating agreement and various rulings. Additionally, Davis submitted a declaration including a recounting of the facts he had learned from his investigation of the case.

### 1. Probable Cause

"Probable cause exists when a lawsuit is based on facts reasonably believed to be true, and all asserted theories are legally tenable under the known facts." (*Cole, supra,* 206 Cal.App.4th at p. 1106.) Whether the facts known to an attorney constituted probable cause to prosecute an action is a question of law. (*Zamos, supra,* 32 Cal.4th at p. 971.) More specifically, "'[t]he presence or absence of probable cause is viewed under an objective standard applied to the facts upon which the defendant acted in prosecuting the prior case. [Citation.] The test of determining probable cause is whether any reasonable attorney would have thought the claim to be tenable. [Citation.] . . . [¶] Hence, "probable cause to bring an action does not depend on it being meritorious, as such, but upon it being *arguably tenable,* i.e., not so completely lacking in merit that no reasonable attorney would have thought the claim tenable. [Citation.]"' [Citation.] Probable cause exists if the claim is legally sufficient and can be substantiated by competent evidence. [Citation.]" (*Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 448-449.)

9

Glavinovich bears the burden of establishing a prima facie case. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) His argument on this point in his opening brief is sparse. It primarily consists of the following. "As illustrated in the above-cited excerpts from the depositions of lead OCPIN Defendant Meka, neither Meka, Sweiden nor any other OCPIN Defendant had probable cause to bring any of their claims against Glavinovich. This includes the 'cash call'-related claims cited by the Court in its earlier order granting the motions to strike filed by Hewitt & Wolensky and Syed Naqvi, and extends to the other claims—for breach of fiduciary duty, fraud, misrepresentation, constructive fraud, professional negligence, etc. — which were alleged in the OCPIN Defendants' Second through Sixth Amended Complaints. [¶] In view of the fact that the OCPIN Defendants and the Attorney Defendants had merely to reveal some portion of the facts which were allegedly known only to Catanzarite in order to survive the demurrers which eventually extinguished their claims against Glavinovich, it is even more reasonable to infer that those facts never existed in the first instance, and that the claims alleged against Glavinovich were assuredly 'based upon suspicion, imagination, speculation, surmise, conjecture or guesswork.'"

We address the defendants separately as three different groups: Meka and Sweiden, the other OCPIN plaintiffs, and Davis. With regard to Meka and Sweidan, Glavinovich's reliance on their deposition testimony as the key evidence of lack of probable cause is misplaced. They did not, as Glavinovich claimed below, acknowledge that all of their claims were baseless. The sum of their testimony is merely that they did not know certain facts, or were only aware of what their attorney had told them. Given the complexity of the allegations here, that is not at all unreasonable, nor can we draw Glavinovich's desired inferences from their testimony. Glavinovich's sparse evidence does not support a prima facie case of a lack of probable cause.

The case is even thinner with respect to the remaining OCPIN plaintiffs, and again, Glavinovich has not met his burden. He cites no evidence (or authority) that would support attributing Meka and Sweidan's knowledge, or lack thereof, to all other OCPIN plaintiffs. Simply put, he produced no evidence against the remaining plaintiffs.

With respect to Davis, Glavinovich's reliance on the deposition testimony of two *plaintiffs* does not speak to the relevant standard applied to *attorneys* in malicious prosecution actions, specifically, "'whether any reasonable attorney would have thought the claim to be tenable.'" (*Antounian v. Louis Vuitton Malletier, supra,* 189 Cal.App.4th at pp. 448-449.) Indeed, Glavinovich submitted no evidence on this point. As a matter of law, Glavinovich has not established a lack of probable cause.

### 2. *Malice*

Even if we had found that Glavinovich established probable cause, he must also demonstrate a prima facie case supporting the last element of a malicious prosecution action, malice. "The 'malice' element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494 (*Downey Venture*).)

Glavinovich argues that malice can be inferred from nothing more than the lack of probable cause, but the lack of probable cause alone is insufficient. (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 452.) Were it otherwise, the malice requirement would simply disappear. "A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citation], but the lack

11

of probable cause must be supplemented by other, additional evidence." (*HMS Capital, Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 218.) "Merely because the prior action lacked legal tenability, as measured objectively (i.e., by the standard of whether any reasonable attorney would have thought the claim tenable [citation]), *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind. In other words, the presence of malice must be established by other, additional evidence." (*Downey Venture, supra*, 66 Cal.App.4th at p. 498, fn. omitted.)

"[T]hat evidence must include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal system for personal gain or satisfaction at the expense of the wrongfully sued defendant. [Citation.]" (*Downey Venture, supra,* at pp. 498-499; see also *Daniels v. Robbins*, *supra*, 182 Cal.App.4th at p. 225.) While malice may be inferred from circumstantial evidence such as the lack of probable cause, such evidence must be "supplemented with proof that the prior case was instituted largely for an improper purpose." (*Cole*, *supra*, 206 Cal.App.4th at p. 1114.)

Moreover, we keep in mind that malicious prosecution is a "disfavored action." (*Leonardini v. Shell Oil Co*. (1989) 216 Cal.App.3d 547, 566.) "[T]he elements of [malicious prosecution] have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872.) We are therefore entirely disinclined to read out the malice requirement from a malicious prosecution cause of action, as Glavinovich would have us do.

The evidence is completely insufficient to establish a prima facie case of malice against any of the defendants.[5]  He had the burden of establishing that defendants sued him not to vindicate any legal right, but with the intent to injure him.  Neither the pleadings nor rulings in the underlying case nor the deposition excerpts of Meka and Sweiden meet this threshold.  Indeed, the excerpts speak almost entirely to the issue of probable cause, but unlike the cases he cites (see, e.g., *Zamos*, *supra*, 32 Cal.4th 958), the facts here do not demonstrate that defendants actually knew the case lacked probable cause.  Glavinovich has simply not met his burden here.  Thus, defendants anti-SLAPP motions were properly granted by the trial court.

## C.  Judicial Notice

Glavinovich also argues, briefly, that the trial court "should have taken judicial notice of the fact that [the judge in the underlying case] made the asserted findings of fact even where judicial notice of the truth of said findings of fact may not have been proper."  Specifically, he refers to the finding of fact that the OCPIN litigants were "not even close" to pleading facts sufficient to sustain their claims against Glavinovich.  Confusingly, he then suggests those findings "should have been received and credited" to him as "their existence tends to reinforce the inference that the OCPIN [litigants] and their attorneys lacked probable cause for the OCPIN litigation."

It appears to us that the court did exactly as Glavinovich initially suggests, taking judicial notice of the existence of the findings, but not their truth.   Giving any

---

[5] For the first time in his reply brief, Glavinovich suggests that some defendants aided and abetted the malicious prosecution of the other defendants, and was therefore equally liable.  "Aiding and abetting a tort requires knowingly assisting the wrongful act. [Citation.]"  (*Cole, supra,* 206 Cal.App.4th at p. 1106.)  Glavinovich does not offer any evidence of aiding and abetting other than defendants' participation in the underlying case.

additional credence to the truth of a judge's factual finding, as Glavinovich then argues, would have been improper.  (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1568.)

## III

## DISPOSITION

The judgment is affirmed.  Pursuant to section 425.16, subdivision (c)(1), defendants may file the appropriate motion for attorney fees with the trial court.  They are also entitled to their costs on appeal.



MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

14